```
 1                   IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF ILLINOIS
 2

 3       UNITED STATES OF AMERICA,      )
                                        )
 4              Plaintiff,              )
                                        )
 5              vs.                     ) Case No.
                                        ) 4:13-cr-40048-JPG-1
 6       RAY ALLEN FLENER,              )
                                        )
 7              Defendant.              )

 8
       INITIAL APPEARANCE ON PETITION TO REVOKE SUPERVISED RELEASE
 9

10
     BE IT REMEMBERED AND CERTIFIED that heretofore on the 9th day
11      of August, 2021, HONORABLE REONA J. DALY, United States
       District Judge, presiding, the following proceedings were
12      recorded by electronic sound recording; produced by FOCR
                     acting as transcription service.
13

14   APPEARANCES:

15   FOR PLAINTIFF:         UNITED STATES ATTORNEY'S OFFICE
                            9 Executive Drive
16                          Fairview Heights, IL  62208
                            By Mr. William E. Coonan
17

18   FOR DEFENDANT:         OFFICE OF THE FEDERAL PUBLIC DEFENDER
                            401 West Main Street
19                          PO Box 1075
                            Benton, IL  62812
20                          By Ms. Angela Hill

21

22              Karen E. Waugh, CSR, RPR
                   IL CSR #084-003688
23                750 Missouri Avenue
                East St. Louis, IL  62201
24                    618-482-9176
             karen_waugh@ilsd.uscourts.gov
25
```

```
 1                              I N D E X
 2
 3   WITNESS                                              PAGE
 4   JANE KIEFER
       Direct Examination by Mr. Coonan:                    6
 5
 6
 7                             E X H I B I T S
 8
     (No exhibits offered.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

| | |
|---|---|
| 1 | (Court convened at 1:32 p.m.) |
| 2 | COURTROOM DEPUTY:  United States District Court for |
| 3 | the Southern District of Illinois is now in session, the |
| 4 | Honorable Reona J. Daly presiding.  You may be seated.  Case |
| 5 | No. 13-40048, United States of America v. Ray Allen Flener, |
| 6 | case is called for an initial appearance on a petition to |
| 7 | revoke.  Are the parties ready? |
| 8 | MR. COONAN:  Yes, ma'am.  Liam Coonan on behalf of |
| 9 | the United States.  Good afternoon, Your Honor. |
| 10 | THE COURT:  Good afternoon. |
| 11 | MS. HILL:  Angela Hill appearing on behalf of Ray |
| 12 | Flener, who appears in person, Your Honor, and good afternoon. |
| 13 | THE COURT:  Good afternoon.  Are you Ray Allen |
| 14 | Flener, sir? |
| 15 | THE DEFENDANT:  Yes, Your Honor. |
| 16 | THE COURT:  All right.  Mr. Flener, you are here |
| 17 | today for an initial appearance because the probation office |
| 18 | has asked that your supervised release be revoked.  Have you |
| 19 | had a chance to see that petition? |
| 20 | THE DEFENDANT:  Yes, Your Honor. |
| 21 | THE COURT:  All right.  Do you feel like you |
| 22 | understand the charges against you? |
| 23 | THE DEFENDANT:  Yes. |
| 24 | THE COURT:  All right.  I need to advise you that if |
| 25 | you are indeed found to be in violation and revoked, maximum |

1  penalties that can be imposed on counts 1 and 2 each is
2  imprisonment of 11 months and 29 days, or 24 months if the
3  PROTECT Act applies, with a supervised release term on each
4  count of 23 months and 29 days or 36 months less any term of
5  imprisonment imposed if the PROTECT Act applies.
6              You are entitled to have an attorney represent you in
7  this matter.  If you can't afford one, the Court will appoint
8  a lawyer for you.  Ms. Hill from the Public Defender's Office
9  is with you here in court, and she has submitted to the Court
10 a financial affidavit.  Are you asking the Court to appoint a
11 lawyer for you?
12             THE DEFENDANT:  Yes, Your Honor.
13             THE COURT:  All right.  You have that affidavit in
14 front of you?
15             THE DEFENDANT:  Yes.
16             THE COURT:  Is that your signature on the bottom of
17 it?
18             THE DEFENDANT:  Yes, it is.
19             THE COURT:  Did you provide the information that's
20 contained in that affidavit?
21             THE DEFENDANT:  Yes.
22             THE COURT:  Is everything in there true and correct
23 as you've attested?
24             THE DEFENDANT:  Yes.
25             THE COURT:  I have reviewed it and I will appoint the

1  public defender to represent you.  I need to tell you some
2  things today about your rights.  I want to remind you that you
3  have the right to remain silent.  You don't have to talk to
4  the Government about these charges.  You have a lawyer to do
5  that for you.  Do you understand that anything that you say to
6  the Government, anything that they overhear you say, anything
7  that you say to absolutely anyone other than your lawyer, if
8  they find out about it, they will use it against you?
9           THE DEFENDANT:  Yes, Your Honor.
10          THE COURT:  Okay.  You also have the right to a
11 preliminary hearing with counsel before the magistrate judge
12 to determine whether there's probable cause to find that you
13 violated the terms of your release.  That would be a hearing
14 before me.  You'd be represented by your counsel.  The
15 Government would likely call your probation officer to testify
16 as to what occurred during the term of your release.  Your
17 counsel could cross-examine her and put on evidence on your
18 behalf.  At the end of that hearing I would make a decision as
19 to whether there's probable cause to find that you violated
20 the terms.  Not the revocation.  That's a different judge.
21 Just the probable cause piece.  My understanding, Ms. Hill, is
22 that we want to have a preliminary hearing today?
23          MS. HILL:  That's correct, Your Honor.
24          THE COURT:  Okay.  That's what we'll do.  Mr. Coonan?
25          MR. COONAN:  Yes, Your Honor.  The United States

1    would like to call U.S. probation officer Jane Kiefer to the
2    stand.
3             THE COURT:  You may.
4       (Witness sworn.)
5             JANE KIEFER, produced, sworn and examined on behalf
6    of the Plaintiff, testified as follows:
7                          DIRECT EXAMINATION
8    BY MR. COONAN:
9    Q.  Ms. Kiefer, how are you employed?
10   A.  I'm a United States probation officer in the United States
11   Probation Office in Benton, Illinois.
12   Q.  And how would you summarize your duties and
13   responsibilities?
14   A.  I'm tasked with supervising individuals that are currently
15   serving a term of supervised release in the Southern District
16   of Illinois.
17   Q.  Are you -- Through your job, do you have a chance to be
18   acquainted or know anything about Mr. Flener?
19   A.  Yes.  Mr. Flener was on my caseload.  I was supervising
20   his term of supervised release for making false statements to
21   a federal law officer and conveying a false threat.
22   Q.  And did you author a petition for revocation of
23   Mr. Flener's supervised release?
24   A.  That's correct.
25   Q.  Okay.  And those allegations are violations of his

1  conditions of release, correct?
2  A.  Correct.
3  Q.  Okay.  Could you take us through them?  And if you'd like,
4  I can kind of bookmark some things.  For example, the first
5  allegation is that on -- as far as relating to the defendant
6  unlawfully possessing a controlled substance, the first
7  allegation is that on July 6, 2021, Mr. Flener admitted
8  possessing methamphetamine, a controlled substance, earlier on
9  July 4th, 2021, and is that correct?
10 A.  That's correct.
11 Q.  And what supports that?
12 A.  Mr. Flener advised me when I spoke to him on July the 6th
13 that he had used methamphetamine on July the 4th after
14 submitting a positive urine screen to the Volunteers of
15 America halfway house staff.
16 Q.  Thank you.  For the second allegation, on July 26, 2021,
17 just 20 days later, the defendant admitted possessing
18 methamphetamine, a controlled substance, on July 23rd, 24th,
19 25th of 2021.  How do we know that?
20 A.  I met with Mr. Flener when he was in the emergency room at
21 Deaconess Hospital in Evansville, Indiana, and he advised me
22 of such, that he had ingested methamphetamine on the
23 aforementioned dates that you stated.
24 Q.  Why was he at the hospital?
25 A.  He had advised the Volunteers of America halfway house

1  staff that he intended to harm himself or others.  He was
2  transported to the hospital for an evaluation.
3  Q.  The third allegation is an administrative allegation
4  dealing with the topic of defendant shall not knowingly leave
5  the district without permission of the court or the probation
6  officer, and this third allegation is that on July 27th, 2021,
7  the defendant informed the probation officer he had traveled
8  to the Central District of Illinois without prior approval or
9  permission.  What's the backdrop on that, please?
10 A.  Mr. Flener had been asked -- he had actually been removed
11 from the Volunteers of America halfway house for his conduct
12 of stating he was going to carry a knife to cause harm to
13 other residents if they came into contact with him or upset
14 him.  He advised me he left after being instructed to do so
15 and he took up residence in Kankakee, Illinois, with a friend.
16 Q.  The fourth allegation regards making payments towards his
17 financial penalties and that the defendant failed to make a
18 monthly payment toward his financial obligation for the month
19 of June 2021, and how do we know that?
20 A.  Mr. Flener currently has a case balance -- I believe it's
21 around 800 and some odd dollars -- on his case.  I don't know
22 the exact amount, but I can check that if we have a recess if
23 the Court needs to know it to the exact.
24 Q.  Has he been employed?
25 A.  Mr. Flener did obtain a position at SMC, a subsidiary of

1    Toyota, while he was a resident of the Volunteers of America,
2    and he did work for a few days for them.
3    Q.   Were you anticipating he'd be working for more than just a
4    few days?
5    A.   Yes.  I anticipated it would be a full-time permanent
6    position for him.
7    Q.   Do you know why he did not stick with the employment?
8    A.   He advised me that he hurt his back on the job and had to
9    leave the employment.
10   Q.   The fifth allegation regarding his residence at the
11   residential reentry center is that on July 26, 2021, the
12   defendant was unsuccessfully discharged from the residential
13   reentry center, which I sometimes refer to the halfway house
14   or RRC.  How did he come about being unsuccessfully discharged
15   from the RRC?
16   A.   On July the 26th of 2021, at 5:04 p.m. in the evening, I
17   received an email from the director of the halfway house.  He
18   stated, Mr. Flener has been expelled from the Hope Hall
19   program property, which is the name of the halfway house.
20   Specifically Mr. Flener stated to me, the director, that he
21   has been threatened by another resident and was going to
22   proceed to remain armed with either a knife or a lock
23   maintained in an assault-ready posture as long as he was at
24   Hope Hall.  Mr. Flener would not offer any identifying
25   information as to who was threatening him.  The director told

1  Mr. Flener we could move him into a different dormitory.
2  Mr. Flener stated that would do no good because of the nature
3  of his opponent.  He stated if he was living in B or C dorm he
4  would remain armed, and the director made it clear to
5  Mr. Flener this was not going to be allowed, and if he
6  persisted with this declaration, he would be removed from Hope
7  Hall property immediately.  He continued to state he had to do
8  so and would remain armed, and in view of the above,
9  Mr. Flener is expelled from Hope Hall programming and property
10 immediately, and he was instructed to get in touch with this
11 officer.
12 Q.  Okay.  And then the next allegation, the sixth allegation,
13 is that Mr. Flener failed to participate in mental health
14 treatment, and that would have been on July 15th, 2021, and
15 that's because of why?
16 A.  On July 15th, the therapist from the mental health agency
17 contacted me to advise she was trying to complete the mental
18 health assessment for Mr. Flener.  However, she informed me
19 Mr. Flener told her he was scheduled to leave the halfway
20 house in a few days for back surgery and he would not be
21 available for services.  Therefore, she had closed his case
22 prior to completing the evaluation.
23 Q.  What do we know about this back surgery that he mentions
24 at least one or two times?
25 A.  Mr. Flener told me when I initially met him at the halfway

1  house in June of 2021 that he was scheduled for back surgery.
2  I asked him where the surgery was, who the doctor was and the
3  time and the date.  He could not provide that to me.  He
4  continued to advise me during the entire time I met with him
5  while he was at BOA that he was scheduled to have back
6  surgery.  However, a date, a doctor, a time and location was
7  never determined or never provided by Mr. Flener.
8  Q.  Have you ever been skeptical of some of the things that
9  Mr. Flener says to you?
10 A.  Mr. Flener's mental health evaluation advises that he's
11 been diagnosed with antisocial disorder and bipolar disorder,
12 coupled with pathological lying.
13 Q.  And then one of those conditions of release was that he
14 participate in a cognitive behavior treatment program; is that
15 correct?
16 A.  That is correct.
17 Q.  And I think that brings us to the seventh and final
18 allegation of violation of supervised release, and in that on
19 July 24th, 2021, the defendant failed to participate in the
20 cognitive behavioral treatment program in that he failed to
21 complete his assigned workbook within 30 days; is that
22 correct?
23 A.  That's accurate.
24 Q.  And how do we know that?
25 A.  He would have been required to have completed the book by

```
 1  July the 24th because he received it on June the 24th, and
 2  they allow you 30 days to complete the workbook and return it
 3  to the agency we contract with.  It has not been received to
 4  date.
 5  Q.  Thank you very much.  Is there anything that I omitted
 6  that you'd like to address?  I'm not suggesting there is
 7  anything else.
 8  A.  No, sir.
 9            MR. COONAN:  All right.  Thank you very much.
10            THE COURT:  Any questions, Ms. Hill?
11            MS. HILL:  I have no questions, Your Honor.
12            THE COURT:  Okay.  You may step down.  Thank you.
13            Mr. Flener, the issue before me is whether there's
14  probable cause or whether it's reasonable to believe that you
15  violated the terms of your release, and we've had evidence
16  with regard to that put on by your probation officer, who has
17  testified with regard to each and every one of the allegations
18  and the petition, and I am finding it is reasonable to believe
19  that you violated the terms of your release, and so this case
20  will go forward on the revocation.
21            The next issue, then, for today is what happens with
22  you between now and the time of your final revocation hearing.
23  Because this is a revocation, the law says that you have the
24  burden to convince the Court that you're not a danger to the
25  community or a flight risk, and for that reason I ask your
```

```
 1  attorney to proceed first.
 2          MS. HILL:  Thank you, Your Honor.  Mr. Flener is
 3  asking that the Court consider bond in this case, and he is
 4  asking that the Court consider any conditions available,
 5  including home confinement and electronic monitoring.  He does
 6  have back issues.  There is a doctor in Evansville that he has
 7  been going to.  The doctor's name is -- well, that he does
 8  have an appointment with on August 13th with Dr. David Weaver,
 9  who's a neurosurgeon in Evansville.  He was referred to this
10  doctor from one of the -- from the hospital over in
11  Evansville.  He's had an ongoing back injury and he was
12  reinjured on the job.
13          I would note that he does have a place to stay, which
14  would be in Central District of Illinois, which was the
15  residence in Kankakee.  He -- I would also note that it's
16  important in this case that Mr. Flener did turn himself in in
17  this case.  Whenever he learned that there was a warrant and
18  there was a petition to revoke, he did turn himself in
19  voluntarily.  So for those reasons, we would ask the Court to
20  consider bond and any conditions that the Court would find
21  appropriate.  Thank you, Your Honor.
22          THE COURT:  Thank you.  Your response, Mr. Coonan?
23          MR. COONAN:  Thank you, Your Honor.  The short
24  response, Your Honor, is Mr. Flener was convicted a few years
25  ago in a 2013 case making malicious threats and lying to law
```

```
 1   enforcement, for which he got a prison sentence.  He was -- As
 2   the probation officer indicated, Mr. Flener does have mental
 3   health concerns, and that came up during an evaluation in that
 4   2013 case.  The -- When he was released into the supervised
 5   release in the RRC, he escaped and was -- then he was charged
 6   with an escape in a 2018 case.  He pled guilty, and then
 7   during his -- after his sentence of supervised release to the
 8   RRC a second time, he escaped, and so 2020 he was convicted of
 9   a second escape.
10           So here we are in 2021, and Mr. Flener has amounted
11   all of these troubles for probation, who have tried to help
12   him out.  He leaves the jurisdiction in violation, going up to
13   Kankakee.  And so really for those reasons, for this first
14   argument, is that he cannot show by a clear and convincing
15   evidence that he would not be a flight risk.  The Government
16   submits that he's an absolute flight risk and that because of
17   the previous convictions, the previous actions -- for one of
18   his earlier escapes he indicated that he was -- would be going
19   to church for an hour and a half or so.  He never came back.
20   So at least legally, I think.
21           The other things, as far as a danger to the
22   community, he was making threats, lying to law enforcements,
23   indicating to the Benton authorities that there was a world
24   order, that they would be bombing things, the voting areas
25   and -- because it was coming up to the election that year,
```

1  coming up to November of '06 or something, I believe around in
2  there, and he's -- well, he's got a colorful history.  I'm
3  just referring to the PSR, but he's -- possession of a stolen
4  vehicle, driving without a license, which for any other person
5  may not be a big deal, but somebody who is using
6  methamphetamine and has been involved in other things, it
7  could be a dangerous situation, which has led up to a more
8  significant charge and conviction for burglary, for which he
9  got six months of an imprisonment, and -- let's see -- then
10 another charge and conviction for burglary, for which it must
11 have been tied together, although two different burglaries, so
12 he got six months' imprisonment as well on that.
13         He -- Then here's the significant danger.  He gets a
14 conviction for battery, for which he gets 21 days'
15 imprisonment, striking somebody in the forehead area with his
16 fist.  He -- And then we get through the PSR to his first
17 federal conviction for making those false statements, Your
18 Honor, regarding November 6, 2012, where he's spreading a
19 story to law enforcement that these folks that -- are going to
20 use weapons and explosives to disrupt the election day.  And
21 then we have his first escape from custody where he gets --
22 where he pleads guilty and gets time remaining of four months
23 and fourteen days of imprisonment, so it was actually time
24 served, and then the 2020 case, where it was very similar,
25 escape from custody, and he gets sentenced on that, and

1  it's -- with that 2020 case that he's violating supervision
2  that the Government alleges by what the probation officer
3  testified to earlier, those seven violations.
4          So they deal with a flight risk, a danger to the
5  community, drugs, so he pretty much has everything but a
6  firearm, Your Honor, and so for those reasons, the United
7  States respectfully requests that the defendant be detained,
8  which is usually a time of, like, three to five weeks during
9  the time before he gets to his final hearing on revocation.
10  Thank you, Your Honor.
11          THE COURT:  Thank you.  Response?
12          MS. HILL:  No further argument, Your Honor.
13          THE COURT:  Okay.  Thank you.  Mr. Flener, I have to
14  consider essentially whether you have demonstrated to the
15  Court that you will not be a danger or a flight risk, so I
16  consider whether you'll show up as ordered -- and I do note
17  that you did turn yourself in this time -- and whether you
18  will be a danger to the community.  In this case, I know you
19  and I have met before.
20          THE DEFENDANT:  Yes, Your Honor, we have.
21          THE COURT:  I think maybe two escape issues you've
22  been here in front of me before, and this is your second
23  revocation on this term of supervised release.  So I note that
24  you know how this works.
25          THE DEFENDANT:  Yes.

```
 1              THE COURT:  And you know how supervised release is
 2   supposed to go.  You get conditions and you follow them, and
 3   you didn't do that the first time, and now you're here with
 4   continued use of methamphetamine.  Maybe what's more
 5   concerning to me is you were terminated from the halfway house
 6   and you left the district.  We have a history of escapes
 7   already, and then you left the district.  We have things that
 8   indicate to me that you don't really want to follow what
 9   probation is asking you, telling you, the Court is telling you
10   to do.  You just show no intention down to the little things,
11   like the mental health treatment and working the workbook and
12   those sorts of things, refusing to participate in mental
13   health because of -- that you're not going to be there because
14   you're going to have a back surgery.  I'm not disputing
15   there's something wrong with your back, but we've had years to
16   figure that out, and it's suspicious to me that at this point
17   in time now we have a back surgery that apparently hasn't been
18   scheduled.  You have an appointment coming up.  I appreciate
19   the fact that you have a back problem, but it's not going to
20   keep you out of prison or jail, and so I'm finding that you
21   are both a flight risk and a danger to the community for all
22   the reasons that have been discussed here today, and so you
23   will be detained.  Your final revocation hearing has been set
24   for August 26 at ten o'clock before Judge Gilbert here in
25   Benton.  Anything else, Counsel?
```

```
 1            MR. COONAN:  Nothing from the Government.  Thank you,
 2   Your Honor.
 3            MS. HILL:  No, Your Honor.  Thank you.
 4            THE COURT:  Thank you.
 5                  (Court adjourned at 1:53 p.m.)
 6                  (End of requested transcript.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                          -oOo-

 2                    REPORTER'S CERTIFICATE

 3        I, Karen E. Waugh, CSR, RPR, Official Court Reporter

 4   for the U.S. District Court, Southern District of Illinois,

 5   although not present at the proceedings in the

 6   above-mentioned court, do hereby certify that I have

 7   transcribed to the best of my ability a true, correct and

 8   complete transcript of the electronic recording provided me

 9   by the clerk's office.

10

11            DATED this 29th day of September, 2020.

12

13

14

15                        /s/Karen E. Waugh, CSR, RPR
```